Good afternoon. Will the attorneys who are going to argue this case please approach the podium, identify yourselves, and indicate to the court how much time you'd like for your argument and for rebuttal. Good afternoon, your honors. I'm Arianne Stein on behalf of Rodney Burnett and I would like to reserve three minutes for rebuttal. Very well. Good afternoon, your honors. Assistant State's Attorney Alan Spellberg representing the people of the state of Illinois. Fifteen minutes for the presentation, your honor. Very well, thank you. Ms. Stein. May it please the court. Trial counsel in this case was ineffective for failing to file a motion to quash arrest and suppress evidence of Burnett's identity. The officers here lacked probable cause to arrest Burnett and had the information obtained after his arrest been suppressed, the outcome of the trial would have been different because the state would not have been able to establish that he lacked a concealed carry license or that he had a prior felony. During a traffic stop, Officer Walsh saw Burnett place an item on the back seat of a van. All of the passengers were taken out of the van. Walsh searched the car and he found the firearm and then he stepped out of the van and he made eye contact with Officer Saviano and immediately motioned for him to arrest Burnett. Now, as a result of the Illinois Supreme Court decision in Aguilar from 2013, the police seeing a person possessing a handgun is no longer sufficient to establish probable cause. So the officers here did not have probable cause to arrest Burnett. And that conclusion is supported by decisions in the first district. In the Thomas case, a case decided by another division of this court, the court held that a tip of someone having a gun was insufficient to provide reasonable suspicion after Aguilar. And though Thomas was reversed on other grounds, the reasoning in that original decision on that point is sound and should be adopted by this court. Cases in other jurisdictions have also held that seeing a person with a gun is not sufficient to establish reasonable suspicion or probable cause. So, but differentiate for me between a Terry step and an arrest. As far as reasonable suspicion, are you saying that this would actually not allow an officer to ask a question? No, Your Honor. We believe that that was the problem here, that the only thing the officer had to do was ask a simple question, ask Burnett if he had a concealed carry license, and that would have provided enough for probable cause. But we didn't have a hearing on that, did we? That wasn't heard by the trial court because there was no motion to suppress. That's true, Your Honor. And the State has argued that issues like this are better raised in PC proceedings for that reason. But the Illinois Supreme Court has said that such claims are cognizable on direct appeal if the record is sufficient to resolve the claim. The Henderson case held that. Veach held that. But that's the issue, though, if the record is sufficient. And we believe that it is here. The State hasn't pointed out what information was missing. Walsh testified to the entirety of the rest. And Walsh testified that there was no mention of the gun beforehand because he didn't want to make the defendants nervous. But once he found the gun, he immediately stepped outside, made eye contact with Saviano, and made a motion for him to arrest and cuff the defendant. So the record is clear that there was no asking about whether he had a concealed carry weapon. Walsh also testified that from the time the defendant was taken out of the van until the time that he was arrested was less than a minute. So we know, based on the testimony that came out at trial, that nothing was asked concerning the concealed carry license. But nothing was said, right? It was the look. Correct. He said he looked at Saviano and made a motion to cuff Burnett. So from the totality of the circumstances that were testified to, that would be sufficient to litigate the issue. And the cases that the State cites on this point, that this is better litigated on throttle proceedings, are distinguishable. The State cites two main cases, Scott and Evans. And Scott is distinguishable on the facts. There, two defendants stole a backpack. The victim told the officer a description of the defendants, but that description was not on the record. Also not on the record was the defendants' differing accounts that were given to the police officer before the arrest. So in Scott, there were specific points and facts that the court could point to that were missing. So, but there was a question here then of the officer, did you say anything? I mean, just the fact that you're basically arguing because there was no testimony about it that it didn't exist, right? That's correct, Your Honor. However, I believe that the testimony is sufficient to establish that it did not exist, again, because of the timeframe. It was less than a minute from the time the defendant was taken out of the van until he was arrested. And Officer Walsh testified that he made an immediate motion to cuff and arrest Burnett. So your argument, then, is that at the time of the arrest, there was no information available to the officer? That's correct. He knew that he had seen Burnett with a gun, but after Aguilar, that's not enough to establish probable cause for arrest. Why do you say that? Well, I just do not understand that Aguilar wipes everything off the books. There are more gun laws on the books than Aguilar, the one specific section of Aguilar. It is unlawful for someone to carry a gun in public who is a felon, right? Certainly, yes, Your Honor. So if a policeman sees someone with a gun, what's he supposed to do? Nothing? Say Aguilar prohibits me from inquiring further? No, he can go up to that person and say, excuse me, do you have an FOID card? Are you under 18? Are you a felon? Any of those negative answers results in an arrest, Aguilar notwithstanding. Certainly, and I agree with that, Your Honor. So what does Aguilar have to do with it? Well, if, because after Aguilar now, a person is allowed to carry a weapon in public, certainly they have to have a FOID card. Under all circumstances? No, but before arresting, police officers have to know what those circumstances are. The court can't arrest, I'm sorry, the police can't arrest and then sort it out later. Arrest or seize, they can certainly seize the person. Certainly, and he had already essentially seized Burnett in this case. And then after a seizure, you're allowed to make a search incident to a lawful seizure, resulting in an arrest, right? Well, yes, Your Honor, and we have no problem with the search of the car. The search of the car under Terry was proper. During a traffic stop, if an officer fears for his safety, thinks he sees a gun, it's fine for him to search. So there was enough reasonable suspicion to search the car. However, there has to be probable cause for the arrest. All the officer had to do here was ask if he had a concealed carry license. Just stop for a second, because you just said that the officer has, under Terry, the officer has a right to search the car? Correct, for purposes of officer safety reasons. To search the entire car for officer safety reasons? During a traffic stop, I believe it's Michigan v. Long that applies Terry to this situation, where if he sees a gun or if there's some sort of danger indicated, he can search. So it's more than just because it's a traffic stop, he's searching the car? Certainly. And in this case, Officer Walsh testified that he saw Burnett place an L-shaped object on the back seat of the van. Under the case law, it seems that that would establish reasonable suspicion for him to search the car and to take the gun at least during the duration of the stop just for officer safety. Okay. And then what? And then the officer has an obligation. The Firearm Concealed Carry Act, for example, says that the officer should ask a defendant if they have a firearm or if, I'm sorry, if they have a concealed carry license. And here, the officer didn't do that. That's not an onerous criminal offense. How did he know that? The testimony from, again, the testimony at trial was clear from Officer Walsh that the short time span, it was less than a minute between the time the defendant got out of the car and was arrested, and Officer Walsh said he immediately. How long does it take to say that you have an FOID gun? I'm sorry? How long does it take to say that you have an FOID gun? That's true, but because he testified that he immediately looked at Walsh and didn't want to talk about the gun to make the defendants nervous and have them flee, and he immediately cuffed him, the record would be complete on that issue. And the point that it is very quick to ask somebody, do you have an FOID card, do you have a concealed carry license, certainly the point that it's quick is the problem here. It's not an onerous burden on the police to ask somebody if they have that. And under the Firearm Concealed Carry Act, it says that upon request of the officer, the defendant shall give forward that information. So the officer here should have asked. At what point do you argue that there was a seizure, and then at what point do you argue there was an arrest, realizing they're not the same, or at what point? Right. There was a seizure under Terry when they had the passenger step out of the car and wait while the officer searched the vehicle. And then the actual arrest came when Officer Walsh stepped out of the van and made a motion telling Saviano to immediately cuff and arrest Burnett. And that is the point at which the arrest came. But there was a probable cause, again, because the officer did not take that small step of asking if he had a concealed carry license. But where in the record does it say, did you say anything, or is that all that happened? Or, you know, where in the record is it that this is a complete record? Well, Your Honor, again, we don't know for certain. But, again, based on the totality of the testimony, it doesn't seem that there was time to do that. And it seemed that Officer Walsh wanted Burnett cuffed and arrested right away. Another case that the State relies on for the point that we should decline to review this issue now and he should raise it on PC proceedings under Evans, and Evans was problematic because it relied on the Coons case, an Illinois appellate court case. And in Pippo v. Veatch, the Illinois Supreme Court criticized Coons and said that Coons did not cite any authority to support its holding that ineffective assistance of counsel claims are better made in PC proceedings. Evans also relied on the Virgin case, which was an entirely different factual scenario. There was no testimony about the arrest. The defendant there was arrested based on drugs that were found on him after the arrest. And so that case is distinguishable from our case where all of the testimony concerning the arrest is on the trial record. Now, if the defendant was hiding the gun, would that change anything? If he had been hiding the gun, I suppose it would depend at what point in time. If Officer Walsh had never seen him with a gun, there wouldn't have been reason to pat him down. If he saw him hiding the gun. If he saw him turn his shoulder and place something in the bag. Right. Well, it depends what would you say. What's the officer supposed to do at that point? Well, he's supposed to, during the duration of a traffic stop that already started properly, he is allowed to search for that gun for officer safety during the duration. Okay. If it looked as though he was hiding it on his person and the officer was afraid that he would shoot him, something along those lines. I mean, there would still have to be a proper pat down in that case. Well, if he was hiding it within reach, which obviously is the case if you're hiding it within your reach, would that change it? Possibly if it seemed that these were furtive motions, if it seemed to establish consciousness of guilt. Because I think in this case where Burnett is placing the gun behind him, it could be that he wanted the gun away from him. He didn't want to scare the officer. Officers have occasionally been known to point their guns. Those are all terrific sentiments. I mean, really, if that was what he was thinking. But what's the officer to do? Well, I'm not arguing that the officer shouldn't find the gun, and he did. But then he's not allowed to arrest Burnett until he has probable cause. You need probable cause for an arrest. But would hiding a gun within reach be probable cause? I don't believe so. Not if we're saying putting it on the back seat. I don't believe that was hiding. I think Burnett, it's possible that he was, again, placing it away from him because officers sometimes, if they think a defendant has a gun, they'll point it at them. They could possibly shoot. We can analogize to a situation where a person on their morning commute is lawfully carrying a gun, has a concealed carry license, and if they're allowed to be stopped, that's going to impede their day. They're going to have to explain it to their supervisor while they're late. There are reputational consequences to being stopped, and that's why we have these Fourth Amendment laws of probable cause. No, no, no. Here's where I lose you. If the person has a concealed carry license, the officer still has a basis, assuming he saw something, to stop and inquire, right? Yes, Your Honor. And if the answer is, I've got a concealed carry license, he doesn't get arrested. That's true, but there's still... What are we talking about? Well, we're still talking about the burden of being stopped by the police without probable cause. The burden is a burden of life. If you have a gun and a policeman sees you with a gun, a policeman has an obligation to inquire. If the answer to the question is, I have a card, I have a concealed carry, you go on your way, right? It doesn't make that stop illegal, unconstitutional, inactionable, in a civil proceeding against the police officer for unreasonably detaining him. It was reasonable. What's the fact of no FOIA card, no concealed carry, being a felon, being 17 years old? It's those additional facts that prompt the arrest. I think that it depends on whether the initial Terry stop was proper. In this case, the car was stopped because there was no front license plate, whereas in a case where an officer just sees someone with a gun, I don't think there would be reasonable suspicion to stop them after admiral. And so that's how this case would differ from that situation. Well, I think what may be different here is that the officer did not ask those questions that Justice Pierce just referred to, whether or not you're 17, are you 18 years of age, do you have a FOIA card, and are you a convicted felon. Then if the defendant answers those questions, if he has a FOIA card, he needs to produce it. If he's not 18, then he's arrested. If he's a convicted felon, he's arrested. But in this case, you're saying that the officer never asked those questions because all of this happened within one minute. He was seized once he was asked to get out of the car, and then he was arrested once he was handcuffed, and no questions were asked. And you believe the trial record sufficiently states that, is that correct? Yes, that's exactly correct, Your Honor. I'm just trying to understand. So if you're correct and the record does show that, if the record shows all the things that would have been shown in a motion to suppress, what's your relief that you're requesting? We're requesting that without the evidence obtained from Burnett's improper arrest, the State would not have been able to prove that he lacked this concealed carry license and that he had a prior felony because the evidence that is obtained, identity evidence, can be suppressed. So we would have to find, based on this record, that the officer did not have probable cause due to the absence of questions about whether he had an articulable suspicion to give rise to probable cause. That's correct, Your Honor. If we're doing a cost-benefit analysis, the cost of asking is very, very low. It's not an owner's burden on police. What is the cost of asking a trial? More questions. What did you say? What did you see? What did you do? That was never relevant to the question of the trial, right? So wouldn't it be better to establish the lack of probable cause through a full-blown hearing? If there was not a forfeiture of that issue or a waiver. That's certainly a remedy that this Court could provide, that we could remand for a suppression hearing if they feel that those questions weren't asked and should have been. Would that be more efficient than a post-conviction petition? I believe it would be more efficient than a post-conviction petition. Sending it back would certainly be quicker, and if the court told the trial court that they wanted a hearing on this particular matter, it would be quicker than having the defendant go through the various stages of a post-conviction petition. And it's really about justice. If he actually should, if there's a motion that should have been filed, should have been granted, the defendant would not be in jail as long as he were waiting for a post-conviction proceeding to take place. So it's really about justice here. That's correct, Your Honor. And concerning whether identity evidence is suppressible, the State holds that it is not, but that position is based on a flawed reading of the Illinois Supreme Court case in Lopez-Mendoza. The language in Lopez-Mendoza that the body or identity of a defendant is not suppressible was referring to whether the court had jurisdiction over the defendant, not whether certain identity evidence could be suppressed. And we know that that's the correct reading of that case, because in that portion of the Lopez-Mendoza decision, the court discussed the Burstein and Frisbee cases, which discuss jurisdiction over a person. We also know that that's true, the proper reading, because there were two defendants in Lopez-Mendoza. One argued the court had no jurisdiction over him,  And the court did not apply the language, the identity of a defendant is never suppressible, to that second defendant. And because it made a separate analysis, we know that that language doesn't apply to suppression evidence. Another division of the Apollo Court in Jose Lopez recently agreed with that interpretation of Lopez-Mendoza and found that identity evidence is suppressible. And several courts in other jurisdictions have also come to the same conclusion of that interpretation, including the Federal Circuits 4, 8, 9, and 10. Thus, a strong precedent supports the position that identity evidence is suppressible. Counsel here was ineffective for failing to file that motion to quash and suppress. Without the evidence obtained from Burnett's improper arrest, the State would not have been able to prove the weapons charges. So Burnett requested this Court reverse his convictions. Thank you. Thank you. Mr. Spoker. Good afternoon again, Your Honors. I'd like to begin by pointing out why the entire discussion of Aguilar is somewhat of a red herring in this case. And it requires a little bit of a history understanding. As you all know, Aguilar was decided by the Illinois Supreme Court in September of 2013. But it was predated by the Seventh Circuit's decision in Moore v. Madigan, which struck down our Aggravated Unlawful Use of Weapons Statute. Pursuant to that, in the summer of 2013, the Illinois legislature rewrote the Aggravated Unlawful Use of Weapons Statute and created the Concealed Carry Laws that we have. So beginning July 9, 2013, we had a constitutional statute. As of that date, what Aguilar held was that the preexisting version, the version before the adoption of the Concealed Carry Law, was unconstitutional, was void of initial because it violated the Second Amendment rights of all citizens. It was a categorical ban on public possession of weapons. The Concealed Carry Law allowed for lawful possession by approved individuals in public. So this case occurred in July of 2015, long after the statute was rendered constitutional, meaning Aguilar is no longer the driving position of what the law was. Instead, the question is, is there probable cause for a police officer to believe that a defendant is violating the law as it existed on July of 2015? And the answer to that, based on the facts of this case, is yes. And it's not simply the sterile question of does a police officer see a person holding a gun in public. It's the manner in which he possesses that weapon. Are the totality of the circumstances suspicious to give the indication that the possession of the gun is not lawful? And in this case, the facts are clear because what we know from Officer Walsh's testimony at the trial was that as he walked up to the minivan as part of the traffic stop, he sees the defendant engage in the furtive movement of reaching into his waistband and leaning back and putting a dark L-shaped object on the back bench. When he looks further, as he takes the individuals out of the car, he looks further. What does he discover? He discovers a loaded Glock firearm there. Now, the reason why that's significant is that the firearm is sitting on top of the back bench, meaning it is not concealed. It is loaded. And what we know under the status of the law in 2015 as well as today is that it is illegal to have an uncovered, unconcealed, loaded firearm in a car. Even someone with a concealed carry permit is not allowed to leave a gun sitting up on the dashboard or on the chair next to them. And so simply finding that loaded gun at that moment, as Officer Walsh said, created probable cause because no one can possess that gun lawfully. Now, that might only be a misdemeanor. It might only be a violation of the concealed carry law. But it doesn't matter because there's probable cause for an offense. And what we know is that the police officers are allowed to arrest somebody to take a full Fourth Amendment seizure once they have probable cause for any offense. And so the fact that the officer learned later that this defendant had both a felony background and did not have an FOID or a CCL is not the relevant question. The argument is great, but it totally ignores how deadly that situation could become if the gentleman had stepped out of the car with that gun showing or if he had decided to pass the gun to the police officer or anything else. Counsel may have alluded to some of that but didn't actually argue it. That situation could have been deadly. So he probably did the right thing by placing it to the back seat and away from himself. Your Honor, I understand the point that you're making. The traffic stop. Most of all, it really happens on the street. And I appreciate that. You don't want to make arguments, but this is what happens on the street. Police officers kill people every day because of that. And, Your Honor, I would say that police officers are also killed quite often in the midst of traffic stops.  Yes, Your Honor. So the police officer had no reason to worry about his life. Your Honor, and I would say that this police officer engaged in completely professional and appropriate behavior because what he did, having seen what he saw, he had them removed from the vehicle safely, quietly, without any incident, and then attempted to secure the gun. There was a detention pursuant to deterrent. Seizure, detention, I can't say. But the arrest did not occur until after the gun was recovered. Right. And were there any questions asked? Is Justice Pierce stating what the questions are? Are you 18 years of age? If you're not, you're arrested. Do you have a valid point card? If not, you're arrested. Are you a convicted felon? If not, you're arrested. So those questions were not asked. Your Honor, yes. Because he was immediately arrested upon the seizure of the gun. Your Honor, based upon this record, as it exists from the trial, where there was no motion to file. All that is clear in the record. Is that correct? Whether or not there were questions asked. Your Honor, I asked you a question. Is that correct? All of that was clear in the record. Correct. The record doesn't reflect that any questions were asked. So everything I just said was clear in the record. Is that correct? Yes, Your Honor. Yes, Your Honor. Thank you. But the point that I'm trying to say is that the circumstances of this case where the manner of possession of the gun, the totality of the circumstances were so suspicious, those questions weren't necessary. In other cases where someone finds a police officer, finds someone on the street and possesses a gun and the circumstances are ambiguous as to whether or not it is being lawfully possessed, then those questions would be necessary. I want to ask you. So if we were to find that there was an effective assistant counsel, what do you suggest? Do you think that this is better left to a PC? Or do you think this matter should be remanded so that evidence can be established? Well, in terms of the ineffective assistant question, there's obviously two points. As we argue in our brief, this record doesn't reflect everything. And the reason why we have to do this. I want to go back there for a moment. I don't understand my question. The point that we say is that it is better left for a PC. And the reason why is because this is a question of ineffectiveness, not a question of whether or not a motion of caution was properly granted or denied. And ineffectiveness is premised upon a presumption that the attorney made a proper decision. And we can't know what his thought process was without bringing him in and having a hearing on what his thought process and decision-making was. This isn't a situation where the motion of caution was filed and was denied and needs further development in some way. This is a question where the attorney made a strategic choice, presumptively, to not file a motion. And that has to be addressed first before we can get to the question of whether or not a motion would have been granted. And so out of respect for the attorney's decision-making, which Strickland requires, the proper remedy would be a post-condition hearing, at which the defendant would have to establish ineffective assistance first. So, Your Honor, that's the answer to the question as to why we made the position about that. But I would stress that the record in this case strongly supports the attorney's decision to not file any motion of caution in this case. As counsel recognized, the recovery of the gun is not in any way suspect. It is not subject to a motion of caution. So the only thing that the attorney could have even thought about filing a motion of caution for would be the subsequent database search that occurs after the arrest, finding that the defendant has a criminal background and has no concealed carry law. There is no, at the time that this occurred, there was no authority in the State of Illinois authorizing a motion of caution in that instance. And the reason why is because the case law has always said that in order to suppress something from an arrest, in order to file a motion to quash arrest and suppress evidence, there has to be evidence which is derived from the arrest, typically a statement, physical evidence found, other identifications, things that occur. No court in Illinois has ever held that searching the defendant's background based upon his name that is obtained as part of the arrest is a basis for suppression. In fact, the closest case law that we have in Illinois at all on that point in 2015 when this occurred would be the Seventh Circuit decision in United States v. Garcia Garcia. It is cited in our brief, and it specifically addresses that question. It was a traffic stop that occurred on I-80 here in Illinois, and the defendant, the police officer ultimately learns that the driver of the car was not lawfully present in the United States. And the defendant in that case said that he should be able to suppress his identity because of the unlawful database search. And what the Seventh Circuit, the Seventh Circuit found the staff was valid in the first place, but even if it were invalid, that would not be a basis to suppress because under Lopez-Mendoza, the case counsel discussed, you don't suppress identity. All of the cases that are addressing that Lopez-Mendoza, which counsel says reject Garcia Garcia, all of those cases deal with additional types of evidence or a situation where the staff or arrest was so egregious that it was being done for an exploitative purpose of learning the defendant's identity and getting further evidence. It wasn't for purposes of... Your Honor, there is none, and that's exactly the point. But the presumption that Strickland requires says that you have to assume that there is that. You cannot assume that the attorney made a mistake. Strickland makes that very clear. Pardon? The tactical decision. Yes, yes. Strickland was very clear that there was a strong presumption with a high burden upon the defendant to overcome that the attorney was competent and qualified and made appropriate decisions based upon the facts as he knew them and conducted a sufficient investigation. Since there was no motion here, we have to presume that that's what happened in this case, and there's no way to overcome that simply because, in hindsight, a motion could have been filed or because, in hindsight, a decision is reached in the honor of health court two or three years later. That's not how Strickland works, and that's why, in this instance, if there were to be any hearing, it should be under the Post-Conviction Hearing Act. Now, again, I want to stress, because what gets lost in this is so much of the discussion available is the public possession. And the single most important point about the possession of a gun is the manner in which it is possessed because a lawful gun owner, a lawful gun holder, is going to possess it in a way that is consistent with the law and the rules and the regulations. And a lawful gun owner, if they possess one, they are taught and they are told and the police officer, if you come up at a police officer, you will inform him that you have a gun. You will not engage in further movements because of the risks associated in a traffic stop. And it's for those reasons that the attorney here was rightful in the decision not to file one because no motion would have ever been granted. There was no evidence that was drawn from the arrest that would be suppressible. There was no problem with the arrest because it was premised on probable cause. And there was no valid notion to believe that the police officer did anything wrong or anything unreasonable under these circumstances. Let me ask you a question. Under current concealed carry, is the permit holder allowed to carry an accessible loaded weapon in the vehicle? I believe they are, yes, Your Honor. But it has to be concealed. It has to be concealed. It has to be concealed. That's what's required. So if I have a concealed carry permit and I'm in a vehicle, I cannot have the weapon on the passenger seat? No, no. That's a violation? That's a violation. Illinois does not have open carry. We do not allow it to be open. If you're in your own home, you can obviously have your gun open however you choose. But if you're out in public or in a vehicle, it has to be concealed. Even if you have a permit? Even if you have a permit. If you don't have a permit, then having a loaded concealed firearm in a car is a crime in itself. Right. In addition to whatever else I could. Right. And so in this instance, the police officer acted reasonably, acted appropriately for both his safety and others, acted within the bounds of probable cause, arrested the defendant only after the gun was recovered and had probable cause to believe that he was unlawfully possessing it because of the fatality of circumstances, the suspicious behavior in which it was being possessed. And based on all that, the attorney properly refrained from filing a feudal motion. So for those reasons, we would ask the court to affirm the defendant's conviction. Thank you. Thank you. Ms. Stein? Your Honors, I just have a few brief points. Concerning the probable cause question, I'd like to discuss the Slidell case that was in our briefs. Slidell was an appellate court case out of Florida. And there, a confidential informant told police that the defendant had guns in a club. As soon as he left the club, he was arrested by police. And the appellate court held the arrest was improper because the tip did not allege any criminal activity and that whether the defendant had a concealed weapons permit was a fact that an officer cannot glean by mere observation. It's the same thing in the instant case. Officer Walsh and the other officers cannot glean by mere observation whether Burnett or any defendant has a concealed carry permit. They have to ask the question. And it's a very simple non-onerous burden for the defendants to do so. What about Mr. Spielberg's statement that even if he had a permit, assuming he had a permit, that he's not allowed to have an accessible weapon that's not concealed in the car? So turning around and putting it on the back seat, the bench, would make it not concealed, right? So a policeman seeing it could say, I bet this guy's got a concealed carry permit. However, it's in plain view. Well, that's true, Your Honor, except that the car had already been stopped by the police and seized, and it was on his person at the initiation of the carry stop. And then he took the gun out and put it away. And as Justice Walker has suggested, the situation could have become deadly if he had left it on his person, if the officer had seen it on him. So in this case, at the start of it, it was concealed properly on his person. Now, concerning the ---- We don't know that either.  He could have been sitting at it. He could have been in his gym bag. He could have been in the car. That's true, but it's the State's burden to prove that it wasn't on him in order to make that charge. How would they prove that in a motion to suppress? Well, if we're talking about whether it was not on his person and they had to prove at trial that he didn't have it on his person, there would have to be some facts to show that it wasn't in his pocket. And we don't have that in this record, so the State would not have been able to prove the charge at trial. Now, concerning whether the evidence is suppressible, the State cites the Garcia-Garcia case, and that case also cites Lopez-Mendoza, but Garcia-Garcia did not conduct a full analysis of Lopez-Mendoza. It did not recognize that Lopez-Mendoza was talking about a jurisdictional issue and not talking about suppressing evidence. The State also overlooks the recent Illinois appellate court case of Jose Lopez, which was decided in 2018, that held that identity evidence is suppressible. For these reasons, Burnett requests that this court reverse his convictions or remand for a suppression hearing. Thank you. Thank you very much. As usual, the State's Attorney's Office and the State Appellate Defender do an excellent job bringing in issues. We appreciate your efforts in this regard. We'll take the matter under advisement. The court stands to recess. Thank you.